

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-12-00394-CV

| | | |
|---|---|---|
| In the Interest of A.N.D., Minor Child | § | From the 235th District Court |
| | § | of Cooke County (11-00124) |
| | § | January 31, 2013 |
| | § | Opinion by Justice Meier |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's order. It is ordered that the order of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


By_____
Justice Bill Meier



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00394-CV

IN THE INTEREST OF A.N.D.,
MINOR CHILD

----------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant B.A. (Father) appeals the trial court's order terminating his parental rights to his daughter, A.N.D. In five issues, Father challenges the trial court's family code section 161.001(1) and (2) findings. We will affirm.

### II. BACKGROUND

Father dated D.T. (Mother) for thirty to forty-five days in 2009. Mother learned that she was pregnant with A.N.D. after the relationship with Father had

---

[1]See Tex. R. App. P. 47.4.

ended. Father was incarcerated when he learned that Mother was pregnant and when A.N.D. was born in July 2010.

Appellee Department of Family and Protective Services (DFPS) became involved in Mother's and A.N.D.'s lives after receiving a referral in November 2010 that alleged neglectful supervision of then three-month-old A.N.D. by Mother. Several months later, in March 2011, DFPS removed A.N.D. from Mother's care because Mother had been arrested and an appropriate caregiver for A.N.D. could not be located. DFPS subsequently filed its original petition for protection of a child, for conservatorship, and for termination in this suit affecting the parent-child relationship.

Father remained incarcerated throughout the pendency of A.N.D.'s case, including during the final termination bench trial in August 2012. The trial court ultimately found by clear and convincing evidence that termination of Father's parental rights to A.N.D. was appropriate pursuant to family code subsections 161.001(1)(E), (N), (O), and (Q) and that termination was in A.N.D.'s best interest. *See* Tex. Fam. Code Ann. § 161.001(1)(E), (N), (O), (Q), & (2) (West Supp. 2012). The interlocutory order terminating Father's parental rights became final when the trial court signed a final order terminating the parent-child relationship between Mother and A.N.D. pursuant to Mother's affidavit of relinquishment. Father appeals.

### III. DISPOSITIVE ISSUES

In his first issue, Father argues that the evidence is legally and factually insufficient to support the trial court's finding that terminating his parental rights to A.N.D. is in her best interest. In his second issue, Father argues that the trial court "erred" by finding that termination was appropriate under family code subsection 161.001(1)(E).[2]

#### A. Burden of Proof and Standard of Review

Termination decisions must be supported by clear and convincing evidence. Tex. Fam. Code Ann. §§ 161.001, .206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007 (West 2008).

In evaluating the evidence for legal sufficiency in parental termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the challenged ground for termination was proven. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We consider evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.*

---

[2]We construe this argument as a challenge to the legal and factual sufficiency of the evidence to support the finding.

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the judgment with our own. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated section 161.001(1) and that termination of the parent-child relationship would be in the best interest of the child. Tex. Fam. Code Ann. § 161.001; *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.*, 209 S.W.3d at 108.

## B. Endangerment Finding

The trial court may order termination of the parent-child relationship if it finds by clear and convincing evidence that the parent has engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child. Tex. Fam. Code Ann. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical or emotional well-being was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.).

Termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the

5

parent is required. *Id.*; *In re D.T.*, 34 S.W.3d 625, 634 (Tex App.—Fort Worth 2000, pet. denied). As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). To support a finding of endangerment, the parent's conduct does not necessarily have to be directed at the child, and the child is not required to suffer injury. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). The specific danger to the child's well-being may be inferred from parental misconduct alone, and to determine whether termination is necessary, courts may look to parental conduct both before and after the child's birth. *Id.*; *In re D.M.*, 58 S.W.3d 801, 812–13 (Tex. App.—Fort Worth 2001, no pet.). A factfinder may also infer from past conduct endangering the well-being of the child that similar conduct will recur if the child is returned to the parent. *See In re D.L.N.*, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied), *disapproved on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 (Tex. 2002).

Texas courts have recognized that criminal activity that exposes a parent to incarceration may be relevant to establish conduct that endangers the emotional and physical well-being of a child. *Boyd*, 727 S.W.2d at 533–34; *In re M.R.*, 243 S.W.3d 807, 819 (Tex. App.—Fort Worth 2007, no pet.); *In re K.M.M.*, 993 S.W.2d 225, 227–28 (Tex. App.—Eastland 1999, no pet.). But mere imprisonment will not, standing alone, constitute engaging in conduct that endangers the emotional or physical well-being of a child. *Boyd*, 727 S.W.2d at

6

533–34. "[I]f the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding" of endangerment under section 161.001(1)(E) is supportable. *Id.*

The record demonstrates that Father has a lengthy history of engaging in primarily drug-related criminal activity for which he has ultimately been convicted and punished. Father's criminal history includes (1) a 2011 conviction and three-year sentence for burglary of a habitation, (2) a 2004 conviction and ten-year sentence for possession of cocaine, (3) a 2002 conviction and five-year sentence for possession of cocaine, (4) a 2002 conviction and 180-day sentence for possession of cocaine, and (5) a 1998 conviction for possession of cocaine. Father was incarcerated at all times relevant to this case—when he learned that Mother was pregnant, when A.N.D. was born, during A.N.D.'s DFPS case, and at the time of trial. His criminal history evidences a deliberate and continuing course of possessing illegal, controlled substances—conduct that has exposed him to incarceration on several occasions. Consequently, the trial court could have reasonably concluded that this course of conduct, and his imprisonment, negatively affected his ability to financially, physically, and emotionally care for A.N.D. Accordingly, we hold that the evidence is legally and factually sufficient to show that Father engaged in conduct that endangered the physical or emotional well-being of A.N.D. We overrule Father's second issue. Having overruled Father's second issue, we need not address his third, fourth, and fifth issues

7

challenging the sufficiency of the evidence to support the trial court's subsection 161.001(1)(N), (O), and (Q) findings. *See* Tex. R. App. P. 47.1; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (stating that parent must have committed only one of the acts prohibited under family code section 161.001(1) for termination of her parental rights).

## C.  Best Interest

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a) (West 2008) (listing factors that should be considered in evaluating the parent's willingness and ability to provide the child with a safe environment). Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interest of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–

8

72 (Tex. 1976). These factors are not exhaustive; some listed factors may be inapplicable to some cases, and other factors not on the list may also be considered when appropriate. *C.H.*, 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.* The same evidence of acts or omissions used to establish grounds for termination under section 161.001(1) may be probative in determining the best interest of the child. *Id.* at 28.

Father has never met A.N.D. He testified that he is currently unable to care for A.N.D., that he wanted his mother (P.F.) to care for A.N.D., and that he planned to work on an oil rig after his release from prison. DFPS performed a home study of P.F. but declined to place A.N.D. with her. P.F. acknowledged that DFPS had removed two of her grandchildren from her care in 1997; according to A.N.D.'s caseworker, Darless Collins, DFPS determined that "some severe forms of discipline were used in the home on both her own children and her grandchildren." Collins testified that she had concerns about Father's extensive history with drugs, that Father had not maintained significant contact with A.N.D., and that she had no indication that Father could provide A.N.D. with a safe home or with any support.

9

Collins explained that A.N.D. had been in a foster home since her removal and that

> [s]he's doing really, really well there. She has bonded to the foster family, their children, their extended family. She has bonded to her sibling, who was briefly placed in that same home. She has no ongoing issues. They've been very diligent about her, her health, her dental care. She did have to have some ECI. An ECI program that she was working, that they took care of that. And then she was dismissed from that program. So she's doing very well there.

Collins opined that all of A.N.D.'s needs were being met and said that DFPS's recommendation for A.N.D. was that she be placed with the foster family long term.

Viewing the evidence under the appropriate standards, we hold that the evidence is both legally and factually sufficient to support the trial court's finding that termination of Father's parental rights to A.N.D. is in her best interest. We overrule Father's first issue.

## IV. CONCLUSION

Having overruled Father's two dispositive issues, we affirm the trial court's order terminating Father's parental rights to A.N.D.

BILL MEIER
JUSTICE

PANEL: LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DAUPHINOT, J., concurs without opinion.

DELIVERED: January 31, 2013

10