Opinion filed October 8, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00100-CV

_____

## IN THE INTEREST OF C.C.B., A CHILD

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 56,014**

### MEMORANDUM OPINION

This is an appeal from an order of termination of the parental rights of the mother and father of C.C.B. Both parents appeal and, in their issues on appeal, challenge the legal and factual sufficiency of the evidence. We affirm.

A jury trial was conducted in this case, and the jury found that the parent-child relationship between each parent and C.C.B. should be terminated. Based on the jury's verdict, the trial court entered an order terminating parental rights. In the order, the trial court found that the mother had failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the child, who had been in the managing conservatorship of the Department of Family and Protective Services for not less than nine months as a

result of the child's removal from the parents for abuse or neglect. *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (West 2014). The trial court also found that termination was appropriate based upon the mother's mental or emotional illness or mental deficiency. *See id.* § 161.003. The trial court found that the father had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the child's physical or emotional well-being. *See id.* § 161.001(1)(E). The trial court also found that termination of each parent's parental rights would be in the best interest of the child. *See id.* §§ 161.001(2), 161.003(a)(5).

As an initial matter, we address the Department's contention that the parents failed to preserve their issues for review. We agree with the Department that the parents failed to preserve their legal sufficiency complaints because this case was tried to a jury, because the father did not file a motion for instructed verdict, because the mother did not reurge her motion for directed verdict after presenting evidence on her own behalf, and because the parents failed to object to the submission of the issue to the jury or file a motion to disregard the jury's answer, a motion for judgment notwithstanding the verdict, or a motion for new trial. *See In re J.P.B.*, 180 S.W.3d 570, 574 (Tex. 2005); *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992). We also agree that the parents' challenges to the factual sufficiency of the evidence were not preserved for review because the parents did not file a motion for new trial. *See* TEX. R. CIV. P. 324(b)(2). We note that, when a meritorious factual sufficiency complaint is not preserved for review in a parental termination case, the failure to preserve that complaint may constitute ineffective assistance of counsel. *In re M.S.*, 115 S.W.3d 534, 546–50 (Tex. 2003). In *M.S.*, the court stated that, if counsel's failure to preserve a factual sufficiency complaint is unjustified, then "counsel's incompetency in failing to preserve the complaint raises the risk of erroneous deprivation too high, and our procedural rule

2

governing factual sufficiency preservation must give way to constitutional due process considerations." *Id.* at 549. The court expressly refused to hold that every failure to preserve a factual sufficiency issue in a parental termination case rises to the level of ineffective assistance. *Id.* Additionally, subsequent to its rulings in *M.S.* and *J.P.B.*, the supreme court determined that a provision in the Family Code was unconstitutional as applied because it precluded the parent from raising a meritorious complaint about the insufficiency of the evidence supporting the termination order. *In re J.O.A.*, 283 S.W.3d 336, 339 (Tex. 2009). For these reasons, we will address the parents' challenges to the sufficiency of the evidence even though the parents did not follow the proper procedure to preserve them for review.

The termination of parental rights must be supported by clear and convincing evidence. FAM. § 161.001. To terminate parental rights under Section 161.001, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. *Id.* Parental rights may also be terminated based upon a parent's mental or emotional illness or mental deficiency that prevents the parent from providing for the physical, emotional, and mental needs of the child. *Id.* § 161.003.

To determine on appeal if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d at 573. To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002).

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

*Background Facts*

The evidence at the final hearing showed that C.C.B. and his half-sister were removed while in the care of the mother. C.C.B. was one year old, and his half-sister was three years old. At that time, C.C.B.'s father was incarcerated, and the mother and the two children were staying at a shelter in Austin. The mother suffered some type of "medical episode" while at the shelter and had to be hospitalized. The origin of the medical episode was unclear; there was some evidence that it was caused by a reaction to a prescription drug, by a seizure and concussion, or by missed methadone doses. Regardless of the cause of the episode, the children were put at risk because of it.

J. Franco, an investigator for the Department, testified that he received the intake on March 14, 2013, due to "immediate risk of abuse or neglect." At that

time, the mother could not communicate or remember anything. She told Franco that her "brain was on overload" and that she did not "know how to function." During the episode, the mother had locked herself and her children in the room at the shelter for two days. The room was dirty, in disarray, and smelled faintly of urine. Franco testified that the condition of the room, including choking hazards, created a risk of harm to the children. The children were removed after it was determined that the mother was not capable of taking care of them at that time and after futile attempts had been made to place the children with caregivers recommended by the mother.

The record showed that the mother had an extensive history involving the use of muscle relaxers and various prescription painkillers, including hydrocodone; that she obtained prescriptions for painkillers from different doctors; and that she used a number of pharmacies to fill those prescriptions. At the time of removal, the mother had been participating in a methadone program: either for pain management or for painkiller addiction. The record reflects that the mother falsified documents and gave inconsistent statements. It also reflects that she did not complete the court-ordered services as required.

The Department presented evidence of domestic violence between the parents and between the mother and other men. One of the episodes of domestic violence between C.C.B.'s parents occurred when the mother was nine months pregnant with C.C.B. She went to the hospital because she was having difficulty breathing and swallowing after the father grabbed her by the neck. Her larynx was swollen. She reported that she did not feel safe in her home with the father there. Another incident of domestic violence was committed by the father against the father's mother. That incident occurred when C.C.B. was two months old. The father was convicted of assault family violence by strangulation based upon the incident with his mother; he was released about one week prior to the final hearing

on termination and had no stable home at the time of the hearing. The father had an extensive criminal history that included convictions for the offenses of burglary of a habitation, credit or debit card abuse, assault family violence, stealing an unsigned check, possession of an illegal weapon, theft of property, theft of service, providing alcohol to a minor, and burglary of a vehicle. The mother expressed a concern to one of the caseworkers about the father's violent conduct and his drug and alcohol abuse.

C.C.B. was eventually placed with a couple that the mother recommended. It was undisputed that the placement was appropriate and that C.C.B.'s needs were being met in that placement. The placement parents provided a loving, safe, stable home for C.C.B. The placement parents have expressed a desire to adopt C.C.B. The CASA volunteer and two Department caseworkers testified that termination of both parents' rights would be in the best interest of C.C.B. The Department's plan for the child was termination of the parents' rights and adoption by the placement parents.

*Mother's Issues*

The mother presents two issues for review. In her first issue, the mother contends that the evidence is legally and factually insufficient to support the finding under Section 161.001(1)(O). To support a finding under subsection (O), the Department must have shown that the mother "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." In her issue, the mother specifically argues that the evidence was insufficient because it did not demonstrate that C.C.B. was removed due to the parent's "abuse or neglect of the

child" as required by Section 161.001(1)(O). The mother relies upon *Mann v. Department of Family & Protective Services*, No. 01-08-01004-CV, 2009 WL 2961396 (Tex. App.—Houston [1st Dist.] Sept. 17, 2009, no pet.) (mem. op.), in support of her argument that subsection (O) requires proof of actual abuse or neglect of the child. The supreme court, however, has specifically disagreed with *Mann* and has, instead, held that the language "abuse or neglect of the child" as used in subsection (O) "necessarily includes the risks or threats of the environment in which the child is placed." *In re E.C.R.*, 402 S.W.3d 239, 245–46, 248 (Tex. 2013). In *E.C.R.*, the supreme court determined that "placing the child's physical health or safety at substantial risk" is sufficient to support a finding of "abuse or neglect." *Id.* at 240.

The record in this case shows that C.C.B. was removed from the mother's care due to a substantial risk to his physical health or safety. The mother had had some sort of medical episode causing her to be unable to properly care for the children. The mother had been residing at a shelter in Austin, but she and her children were no longer welcome at that shelter. The mother's room at the shelter was in a state of disarray and was unclean. There was testimony that the condition of the room posed a safety hazard to C.C.B. Pictures of the room were admitted into evidence. Evidence of the mother's physical or mental state at that time combined with the condition of the room constituted sufficient evidence from which the trier of fact could have determined by clear and convincing evidence that the child was removed due to a substantial risk of abuse or neglect. The mother's first issue is overruled. Because we find the evidence sufficient to support termination of the mother's parental rights under Section 161.001, we need not address the mother's second issue challenging the sufficiency of the evidence to support termination under Section 161.003. *See* TEX. R. APP. P. 47.1.

7

*Father's Issues*

The father presents four issues for review. In his first and second issues, the father challenges the legal and factual sufficiency of the evidence to support the best interest finding. In his third and fourth issues, the father challenges the legal and factual sufficiency of the evidence to support the finding that he engaged in conduct or knowingly placed C.C.B. with persons who engaged in conduct that endangered the physical or emotion well-being of C.C.B.

With respect to the third and fourth issues, we hold that there was clear and convincing evidence from which the trier of fact could reasonably have formed a firm belief that the father engaged in conduct that endangered the physical or emotional well-being of the child. FAM. § 161.001(1)(E). Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re D.O.*, 338 S.W.3d 29, 33 (Tex. App.—Eastland 2011, no pet.). Additionally, termination under subsection (E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re D.T.*, 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.). The offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d at 345. Domestic violence may constitute evidence of endangerment. *Id.*; *C.J.O.*, 325 S.W.3d at 265.

In this case, there was evidence that the father committed domestic violence and that he engaged in a course of conduct that included alcohol or drug abuse and numerous criminal convictions. The father was convicted of assault family violence against his mother for an incident that occurred in the presence of his children. The father was incarcerated for that crime from the time that C.C.B. was

8

two months old until about one week prior to the final hearing on termination. The father had also engaged in domestic violence with C.C.B.'s mother and had an extensive criminal history. The evidence is legally and factually sufficient to support the finding under Section 161.001(1)(E) because the father engaged in a voluntary, deliberate, and conscious course of conduct that endangered C.C.B.'s well-being. The father's third and fourth issues are overruled.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trier of fact could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of the child. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the emotional and physical needs of C.C.B. now and in the future, the emotional and physical danger to C.C.B. now and in the future, the parental abilities of the parents and the prospective adoptive parents, the plans for C.C.B. by the Department, the instability of the father's home, the stability of the child's placement, acts and omissions indicating that the parent-child relationship was not a proper one, the domestic violence committed by the father, and the father's extensive criminal history, we hold that the evidence is sufficient to support the finding that termination of the father's parental rights is in the best interest of C.C.B. *See id.* We cannot hold that the finding as to best interest is not supported by clear and convincing evidence. The father's first and second issues are overruled.

### *This Court's Ruling*

We affirm the trial court's order of termination.

October 8, 2014                                    JOHN M. BAILEY

Panel consists of: Wright, C.J.,                   JUSTICE
Willson, J., and Bailey, J.

9